# Exhibit A

DE FRANK LAW GROUP, LLC.
PETER DE FRANK, ESQ. – 035282007
986 McBride Avenue
Woodland Park, NJ 07424
Tel. (973) 404-7500
Fax. (973) 238 – 5123
ecourts@defranklawgroup.com
*Attorneys for Plaintiff*

| | |
|---|---|
| LOREN HUETHER and GREGORY HUETHER, her husband (per quod), <br><br> *Plaintiffs,* <br><br> v. <br><br> INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM, INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown) <br><br> *Defendant(s).* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY <br><br> DOCKET NO.: MRS-L-86-26 <br><br> *Civil Action* <br><br> SUMMONS |

**FROM THE STATE OF NEW JERSEY TO THE DEFENDANT(S) NAMED ABOVE:**

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, New Jersey 08625. A $175.00 (Law Division) or $175.00 (Chancery Division) filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff=s attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights, you must file and serve a written answer or motion (with the fee and completed Case Information Statement) if you want the Court to hear your defense. If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services Office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

Dated: February 2, 2026                    /s/ Michelle M. Smith
                                           Michelle M. Smith
                                           *Clerk of the Superior Court*


Name and Address of Defendant to be served:   **Amazon**
                                              **c/o Corp Services Co.**
                                              **100 Charles Ewing Blvd.**
                                              **Princeton So. Corp. Center**
                                              **Ewing, NJ 08628**

**DE FRANK LAW GROUP, LLC**
**ANDREW A. FRASER, ESQ. – 006221989**
**986 McBride Avenue**
**Woodland Park, New Jersey 07424**
**Tel. (973) 404-7500**
**Fax. (973) 238-5123**
**ecourts@defranklawgroup.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| LOREN HUETHER and GREGORY HUETHER, her husband (per quod),<br><br>*Plaintiffs,*<br><br>v.<br><br>INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM, INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown)<br><br>*Defendant(s).* | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MORRIS COUNTY<br><br>DOCKET NO.: MRS-L-<br><br>*Civil Action*<br><br>COMPLAINT, AND DEMAND FOR TRIAL BY JURY, DESIGNATION OF TRIAL ATTORNEY, DEMAND FOR ANSWERS TO INTERROGATORIES; NOTICE TO PRODUCE |

Plaintiff, **LOREN HUETHER** and **GREGORY HEUTHER** (per quod) residing in Madison, New Jersey, by way of Complaint against the Defendants, says:

## COMPLAINT

1. Plaintiffs, Loren Huether and Gregory Heuther (per quad) bring this Complaint against Defendants, Instant Brands, LLC f/k/a Corelle Brands, LLC, Amazon.com Inc, as well as fictitious parties JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown) for her personal injuries and civil damages.

## NATURE OF THE CASE

2. This is a cause of action against the Defendant for a personal injury arising out of a defective Pyrex glassware product exploded and severely severed Plaintiff's left hand.

## PARTIES

3.      Plaintiff, Loren Huether is a resident of Madison, New Jersey, Morris County.

4.      Defendant Instant Brands LLC f/k/a Corelle Brands LLC ("Corelle" or "Defendant") is a Delaware limited liability company with its principal place of business located at 3025 Highland Parkway, Suite 700, Downers Grove, Illinois 60515. PYREX glassware was and is sold by Instant Brands LLC f/k/a Corelle Brands LLC under license from Corning Incorporated ("Corning").[1]

5.      Defendant, Amazon.com Inc, is the retail party from which the subject products were purchased and distributed.

6.      Defendants, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), constitutes fictitious parties currently unknown including, but not limited to, parties that designed, sold, produced, distributed, manufactured, marketed, produced and/or played a role in the chain of commerce or other relevant role.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action because Defendants Instant Brands LLC f/k/a Corelle Brands LLC, and Amazon.com Inc, conducts substantial business in Morris County and have committed tortious acts in New Jersey.

8.      Defendants are currently transacting business in New Jersey shipping into New Jersey, or by using, offering to sell or selling or by causing others to use, offering to sell

---

[1] *See* https://corporate.instantbrands.com/brands/ ("CORNTNGWARE® and PYREX® are registered trademarks of Corning Incorporated used under license by Instant Brands LLC f/k/a Corelle Brands LLC.")

or actually selling products in Morris County, New Jersey.

9. Defendants derive substantial revenue from the interstate and/or international commerce, including substantial revenue from goods used or consumed or services rendered in the State of New Jersey and Morris County.

10. Venue is proper in Morris County, New Jersey because the incident and a substantial part of the counts giving rise to Plaintiffs claims occurred in Morris County.

11. At all relevant times, Defendants directly and/or through their agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed, promoted and/or sold their products in Morris County, New Jersey.

## FACTUAL ALLEGATIONS

12. On or about January 16, 2024, Plaintiff, Loren Huether, took a Pyrex glassware product, purchased through Amazon.Com, Inc out of her refrigerator to empty the contents into her kitchen garbage.

13. Upon normal and expected use the Pyrex dish broke and exploded with shards of glass that penetrated her left thumb and hand, causing severe injuries.

14. After the injury, Plaintiff incurred significant medical expenses, bodily injuries, lost wages, pain and suffering, loss of enjoyment of life, loss of functional use of her hand, and will have future medical expenses.

## THE DEFECT

**A.** **The Original Borosilicate Pyrex**

15. Pyrex was the first branded product manufactured by Corning Incorporated's

Consumer Products Division. Beginning in the early 1900s, the original Pyrex was manufactured from borosilicate glass. Corning built the brand's reputation by manufacturing Pyrex from borosilicate glass for decades.[2]

16.     The Pyrex brand was born from a discovery by one of Corning's scientists, Jesse Littleton. After a casserole dish cracked, his wife, Bessie Littleton, asked him if the temperature-resistant glass he was evaluating for railroad lanterns and battery jars could be used for baking. He created a makeshift dish with the borosilicate glass, and Bessie successfully baked a cake with it. From this discovery, Corning launched Pyrex, the first consumer cooking products made with temperature-resistant glass.[3]

17.     In its original patent application, dated May 27, 1919, Corning stated that its culinary products would be made of borosilicate glass due to its high coefficient of thermal endurance, and noted it was "desirable" for its culinary glass products to have the "power to undergo sudden cooling without fracture."

18.     Since Pyrex products made of borosilicate glass were strong and could withstand the substantial temperature changes that occur during normal household use, Pyrex products earned the trust of generations of American consumers, who reasonably believed that they could safely use Pyrex for normal household cooking.

---

[2] Coming Museum of Glass, "A Century of Pyrex," https://www.cmog.org/article/pyrex (last accessed February 17, 2023).

[3] *See* Logan, Liz, "How Pyrex Reinvented Glass For a New Age," Smithsonian Magazine, June 5, 2015, https://www.smithsonianmag.com/innovation/how-pyrex-reinvented-glass-new-age-180955513 (last accessed February 17, 2023).

B. **Defendant's Shift to Cheaper and Inferior Soda Lime Pyrex**

19.     Prior to the incident, Corning began manufacturing Pyrex from soda-lime glass instead of borosilicate glass[4].

20.     Today, Corelle continues to manufacture Pyrex from soda-lime glass, under a licensing agreement with Corning.

21.     Corning made the change because it realized that it could produce Pyrex from soda lime glass, which would look just like Pyrex made from borosilicate glass, but would allow a much greater profit margin - particularly if consumers did not know or understand the difference between the two formulation.

22.     Soda lime glassware is significantly less expensive to produce than borosilicate products because both raw material and energy costs are substantially lower[5].

23.     Unfortunately for unsuspecting consumers, a significant reduction in quality and safety accompanies this reduction in costs.

24.     Corning made the change from borosilicate glass to soda lime glass without retooling the design to make it more appropriate for the new material, without informing consumers of the change, and without giving consumers adequate notice of the resulting dangers.

---

[4] Publicly available information regarding the precise timing of the change in materials is conflicting. The details of the shift from borosilicate glass to soda lime glass, and ways to distinguish the two products, will be the subject of discovery.

[5] Corning has acknowledged the cost of borosilicate glass, in comparison to soda lime glass, referring to "the increased cost for [borosilicate] materials" as a "definite handicap." https://patents.google.com/patent/US2224493 (last viewed February 17, 2023).

## B. The Dangers of Soda Lime Pyrex

25.     Borosilicate glass is a superior material for bakeware because, as noted, it has a low coefficient of thermal expansion, meaning that it does not expand much when it is heated, even to high temperatures.  This makes borosilicate glass very resistant to thermal shock and allows an increased maximum change in surface temperature with cracking, breaking, shattering, or exploding[6].  Borosilicate glass is also mechanically strong and can withstand the rigors of normal household kitchen use without breaking.

26.     In contrast, soda lime glass can and regularly does shatter unexpectedly during the course of normal household kitchen use, shattering into pieces of sharp glass.

27.     This is because soda lime glass, which is among the cheapest form of commercial glass to produce[7], has a very high coefficient of thermal expansion[8] and very poor thermal shock resistance.[9]  When heated, soda lime glass expands substantially more than borosilicate glass.

28.     Accordingly, soda lime glass is much more prone to cracking, breaking, shattering, or exploding when exposed to rapid changes in temperature[10]. Stated another way, borosilicate glass is "stronger and harder than soda lime glass"[11].

29.     In fact, in separate patent application, Corning noted that the "thermal stability [of soda

---

[6] T. J. Liu & N.A. Fleck, *The Thermal Shock Resistance of Solids,* 46 Acta Materialia 4755, 4755 (1998); *Transparent Materials Comparison,* Rayotek Scientific, Inc., https://rayotek.com/tech- specs/material-comparisons.htm (last viewed February 17, 2023).

[7] https://www.cmog.org/article/types-glass (last viewed February 17, 2023).

[8] *Borosilicate Glass vs. Soda Lime Glass,* Rayotek Scientific, Inc., August 2nd, 2016, https://rayotek.com/wpnews/borosilicate-glass-vs-soda-lime-glass (last viewed February 17, 2023).

[9] *Supra, Transparent Materials Comparison;* United States Patent, "Borosilicate, opal glass article," Hermann L. Rittler, Patent No. 4,337,295, June 29, 1982, https://patents.google.com/patent/US4337295 ("However, such [soda lime] glasses are generally characterized by a relatively high thermal coefficient of expansion. Hence, they have a low resistance to heat shock, unless physically strengthened as by air tempering.") (last accessed February 17, 2023)

[10] *Supra, Borosilicate Glass vs. Soda Lime Glass.*

[11] *Supra, Transparent Materials Comparison*

lime glass] sometimes leaves something to be desired". [12]

30.      Unfortunately for consumers, not only is brand new Pyrex made of soda lime glass more susceptible to shattering than brand new Pyrex made of borosilicate glass, but that susceptibility increases over time with normal household use.

31.      Like any glassware, Pyrex will be subject to scratching, chipping, and other minor damage through normal and expected use, cleaning, and storage. This is unavoidable on the part of the consumer and is or should be anticipated by the Defendant.

32.      With original borosilicate Pyrex, normal wear and tear was of less concern because that product had virtually no coefficient of thermal expansion and thus had a significantly lower risk of thermal shock failure than soda lime Pyrex.

33.      Because soda lime Pyrex has a much greater coefficient of thermal expansion, it must be tempered, or heat strengthened, in order to increase its thermal shock resistance.

34.      Tempering, however, is not a solution to the problems associated with soda lime glass. Rather, tempering exacerbates the problems associated with soda lime glass.

35.      Tempering strengthens annealed soda lime glass by increasing the amount of surface compression. Damaging the surface, however, reduces the amount of tension necessary to cause the glass to fail. So, with every nick, scratch, or chip - even those not easily detectible, a soda lime Pyrex product becomes more likely to shatter from changes in temperature.

36.      Defendants knew and/or should have known that glassware sustains minor damage in normal and expected use, making tempered soda lime Pyrex much more susceptible to

---

[12] United States Patent, "Silica-soda-lime glass compositions and their applications," Nathalie El Khiati, Nathalie Dideron, Daniel Ricoult, and Pascale LaBorde, Patent No. 6,063,718, May 16, 2000, https://patents.google.com/patent/US6063718 (last accessed February 17, 2023).

thermal shock failure than borosilicate Pyrex.

37.     Tempering not only makes soda lime Pyrex more likely to shatter, but it makes Pyrex more dangerous when it does shatter as a result of thermal shock. This is because Defendant's tempering process creates internal tension in each Pyrex product. When Pyrex shatters due to thermal shock (which often happens while it is sitting on a flat surface), that internal tension creates shards of glass rather than beads.  Thus, as a result of the tempering process, soda lime Pyrex products don't simply crack – they explode into razor sharp shards.

38.     By contrast, the original borosilicate Pyrex products, which did not require heat strengthening, were "annealed," or essentially free of internal tension. Unlike soda lime Pyrex, borosilicate Pyrex sends glass shards flying through the air only when it is dropped (and dropping, unlike shattering from changes in temperature associated with normal household use, is a risk understood by most consumers).

39.     In theory, heat strengthening, or thermal tempering, could provide the additional benefit of causing the Pyrex products that do break to shatter in a much safer manner, known as "dicing." Dicing is the process that occurs when glass shatters into small relatively uniform and relatively harmless cubes, or ball like safety glass. Dicing is seen, for example, when tempered automobile glass fractures into small fragments, and consumers expect "tempered" glass to break in that manner.

40.     However, as discussed in more detail below, the authors of a scientific article analyzed modern soda lime glass cookware, including Pyrex, using several methods, and concluded that although the soda lime glass cookware had been heat-strengthened to some degree, in actuality the heat strengthening neither: (1) substantially increased the products' ability to withstand temperature change, nor (2) made the glassware safer by causing it to dice into small,

relatively uniform cubes or balls.

41.     In sum, Defendant chose to partially temper soda lime Pyrex glassware knowing that doing so: (1) not only would not properly protect against thermal shock failure, but would actually increase the risk of such failure over time with normal use; (2) would not prevent large, razor sharp shards of glass-which risk severe lacerations to consumers-from forming upon failure; and/or (3) would create internal tension that can cause those sharp shards to fly through the air with potentially devastating results.

**D.  <u>Scientific Research Confirms the Danger and Inferiority of Soda Lime Glass</u>**

42.     Various studies have demonstrated the significant differences in thermal endurance and resistance to temperature change between borosilicate glass and soda lime glass.  For example, Dr. Richard Bradt, a materials scientist and professor emeritus at the University of Alabama, conducted an independent experiment to determine the thermal shock resistance of pure soda lime glass, when compared to borosilicate glass.  Dr. Bradt's findings demonstrated that borosilicate glass can withstand a 333 degree Fahrenheit change in temperature before fracturing while soda lime glass can withstand a temperature change of only 99 degrees Fahrenheit before fracturing.[13]

43.     In fact, a prominent retired Corning scientist, upon reading Dr. Bradt's study, wrote to Dr. Bradt to say that the article "serves a very important purpose in publicizing the criminal practice (in my mind at least) in selling cheap high expansion soda lime glass under the Pyrex name to the innocent public."[14]

44.     In 2012, Corelle (formerly, World Kitchen) attempted to discredit the findings of

---

[13] R.C. Bradt & R.L. Martens, *Shattering glass cookware,* American Ceramic Society, Sept. 2012, at 33, https://rroeder.nd.edu/assets/387776/glasscookware.pdf (last accessed March 23, 2021).
[14] Letter from Dr. Stanley Donald Stookey, inventor of CorningWare, to Dr. Richard Bradt.

Dr. Bradt and his colleagues in a lawsuit where Corelle unsuccessfully argued that Dr. Bradt's findings were false, deceptive, and misleading to consumers. The court ruled in favor of Dr. Bradt, finding no admissible evidence refuting his findings. *World Kitchen, LLC v. The American Ceramic Society, et al.,* Case No. I 2-cv-8626, 2016 U.S. Dist. LEXIS 85717, at *20 (N.D. Ill. June 30,2016).[15]

45.     Corelle continued its attempt to discredit the findings of Dr. Bradt's study and similar studies on its website in a section called "The Truth About Pyrex."  The stated purpose of that particular section is that Corelle "want[s] you to know about reports mischaracterizing and wrongly disparaging the reliability, durability and excellent safety record of American-made glass cookware made from heat-strengthened soda lime glass."[16]

### E.   Defendant's Uniform and Widespread Marketing and Sale of Pyrex

46.     Corelle markets Pyrex [17] directly to consumers throughout the United States, including through the current website https://www.pyrexhome.com and until at least September 2018 on https://www.pyrexware.com.

47.     Corelle also sells Pyrex products through leading retailers in the United States, such as Target, Bed Bath & Beyond, grocery stores, local retailers, and through on-line retailers

---

[15] Order, ECF No. 259, *World Kitchen, LLC v. The American Ceramic Society, et al.,* No. 1:12- cv-08626 (N.D. Ill. June 30, 2016). Corelle appealed the court's judgment but later voluntarily dismissed its appeal. *World Kitchen, LLC v. Bradt,* No. 19-3082, 2017 U.S. App. LEXIS 15391 (7th Cir. Feb. 28, 2017).

[16] World Kitchen, LLC, *The Truth About Pyrex*

[17] Corelle currently manufactures and markets Pyrex, and the licensing agreement may give Corning control over some of those functions, as well. Corning's current involvement in the manufacturing and marketing of Pyrex will  be the subject of discovery.

like Amazon.com Inc.

48.    Corning initially marketed Pyrex as "ice-box to oven" and "oven to ice-box," and Corelle has carefully cultivated and perpetuated the consumer perception that Pyrex can withstand any change in temperature associated with normal household cooking and freezing, even after transitioning from borosilicate glass to soda lime glass.

49.    During more than a century of advertising, Defendant's message has remained clear and unchanged, despite the change in materials. In fact, the Corning Museum of Glass, which was established by Corning on the company's 1 0 0th anniversary, recently celebrated "A CENTURY OF PYREX," noting: "Pyrex has become an icon in most American homes, in the forms of clear borosilicate bakeware, sets of patterned opal ware, and stovetop FLAMEWARE. Layered into the history of the Pyrex brand are the personal histories of families and individuals who have used, loved, gifted, and collected America's favorite dish over the last 1 0 0 years[18].

50.    ln 1915, an advertisement announcing, "Bake in a glass!" appeared in Good Housekeeping, informing consumers that Corning had created a product that allowed food to be mixed, baked, and served all in the same dish. Just a few years later, by 1919, four million pieces of Pyrex glassware, made of borosilicate glass, had been sold to customers throughout the United States.[19]

51.    Corelle continues to market Pyrex products as "versatile" glassware that is "safe to

---

[18]Coming Museum of Glass, "A Century of Pyrex," https://www.cmog.org/article/pyrex (last accessed February 17, 2023).
[19] Danovich, Tove K., "Does Your Family's Century-Old Pyrex Still Rule The Kitchen?", National Public Radio, https://www.npr.org/sections/thesalt/2017/07/25/538527917/does-your- familys-century-old-pyrex-still-rule-the-kitchen (last accessed February 17, 2023).

use in the oven, microwave, refrigerator, freezer and dishwasher." Through its license with Corning, Corelle advertises Pyrex products on its website as versatile and intended for use in a variety of temperatures:

> Versatility makes it easier for you with these cook-and-serve in-one dishes, that go from the oven to the table. Use them for dry or refrigerated storage and microwave reheating and enjoy maximum functionality with minimal mess.[20]
> Dishwasher, refrigerator, microwave & pre-heated oven safe.[21]

52.   These assertions are false, misleading, unfair, and deceptive because the Pyrex glassware sold to consumers, including Plaintiff, is inherently dangerous due to the Defect which renders it likely to shatter during normal household kitchen use.

53.   Corelle failed to disclose the Defect to consumers, including to Plaintiff, at any time before, during or after purchase.

54.   In Europe, where Pyrex is still made of borosilicate glass under a separate license from Corning, the products for sale are advertised as being made of "tempered borosilicate glass, *the best glass for oven safe cooking.*"  European Pyrex products are also advertised as being "thermal shock resistant," such that they can go "straight from the over to the table…from the table to the refrigerator…from the refrigerator to the oven…" a belief that American consumers continue to hold as a result of Defendant's failure to disclose the shift in materials from borosilicate glass to inferior soda lime glass[22].

---

[20]http://www.pyrexware.com/easy-grab-4-pc-oblong-baking-dish-set/1090992.html#start=8 (last viewed February 17, 2023).
[21] http://www.pyrexware.com/4.5-qt-oblong-baking-dish/5302470.htm1#start=2 (last viewed February 17, 2023).

[22] https://www.pyrexuk.com/products/roasters/square-roaster-29x23crn. last viewed February 17, 2023); https://www.pyrexuk.com/rnaterials/borosilicate-glass.htrnl (last viewed February 17, 2023). (emphasis added).

## F. Defendant's Longstanding Knowledge of the Defect

55.    At all relevant times, Defendants knew and/or should have known when they marketed and sold Pyrex to the public that Pyrex suffered from the Defect(s) and Defects, which creates an unreasonable risk that Pyrex will crack, break, shatter, shard and/or explode when used as advertised. These risks include significant personal injury and/or property damage to consumers, as well as the destruction of the product itself during its useful life.

56. Defendant's knowledge is includes through civil lawsuits filed by or against it, including when it was previously doing business as Instant Brands, LLC, f/k/a Corelle Brands, LLC.

57.    Defendant's knowledge is further established through numerous online postings complaining that Pyrex glassware failed during normal use, internal testing and consumer complaints.

58.    Defendant's knowledge is even further established through published articles written about Pyrex glassware and the inferior quality of the soda lime glass used in the product. As noted, in approximately September 2012, the American Ceramics Society published an article entitled "Shattering Glass Cookware," which concluded that Defendant's reformulation of Pyrex products from borosilicate glass to soda lime glass reduced the products' "thermal stress resistance," making them vulnerable to "sudden, explosion-like failure." R.C. Bradt and R.L. Martens, "Shattering Glass Cookware," *Am. Ceramic Society Bull.* (Sept. 2012) (hereinafter, "American Ceramics Society Article"), at 33. The American Ceramics Society article also reveals that "documented reports of incidents of dramatic shattering failures during what most kitchen cooks would consider normal use suggests that

the margin of safety for avoiding thermal stress failures of soda lime silicate cookware is borderline. It does not appear to be adequate for all household cooking." *Id.* At 37.

59.     The authors of the American Ceramics Society article analyzed modern soda lime glass cookware, including Pyrex, using several methods, including observation of the long, sharp shards produced when those products shatter. The American Ceramics Society article authors concluded that, although the soda lime glass cookware had been heat-strengthened to some degree, in actuality the heat strengthening neither (1) substantially increased the products' ability to withstand temperature change, nor (2) made the glassware safer by causing it to break into small, relatively uniform cubes (a process known as "dicing").

60.     In the words of the authors, the heat strengthening "does not appear to be sufficient to increase substantially the thermal stress fracture resistance of the cookware, nor is it sufficient to create a desirable dicing fracture pattern[.]"

61.     Corelle is well aware of the American Ceramics Society article, given that they sued the authors under a variety of theories, and lost on all claims following a bench trial in this Court. *World Kitchen, LLC v. American Ceramic Soc'y, et al.,* Case No. 12-cv-8626, 2016 WL 3568723 (N.D. Ill. June 30, 2016). Defendant's indisputable knowledge of the significant difference in thermal shock resistance between borosilicate Pyrex and heat-tempered soda lime Pyrex is evidenced by their unsuccessful lawsuit which failed to prove any deception by Dr. Bradt or his research colleagues.[23]

62.     Corelle's actual knowledge of the Defect(s) are also demonstrated by the section of their website entitled "The Truth About Pyrex"[24] wherein they continue to attempt to

---

[23] *Supra,* i 55.
[24] *Supra,* n.17

discredit findings that their soda lime glassware has a significantly lower thermal shock resistance than borosilicate glassware. Not only has Instant Brands LLC f/k/a Corelle Brands, LLS and Amazon.com Inc's been aware of the Defect(s), it actively attempts to conceal it from consumers through this website section and other measures.

63.     Further, various incidents of shattered Pyrex glassware have appeared in the media, including the website of Clark Howard, a popular consumer expert and host of the nationally-syndicated *Clark Howard Show,* whose family experienced a "loud explosion" during a family dinner when a brand new Pyrex casserole dish exploded,[25] and in YouTube postings by consumers.[26]

64.     Customer complaints reported to the Consumer Product Safety Commission are also indicative of the scope of this Defect(s), and further demonstrate that Defendants Instant Brands LLC f/k/a Corelle Brands, LLS and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), either knew and/or should have known of its existence. These complaints, available online, all relate to Pyrex glassware, with some complaints being posted as far back as 2011 and others as recently as the end of 2017:

> a.  (In November 2017) I was baking yams in the largest pan. after I took the pan out of the oven and set it on top of the oven, it exploded.

---

[25] Timmerman, Michael, "Pyrex glass dish explodes in Clark Howard's kitchen," Clark.com. May 4th. 2017, https://clark.com/family-lifestyle/pyrex-dish-explodes-clark-howard-kitchen (last accessed February 17, 2023).

[26] *See, e.g.,* "Exploding Pyrex!" https://www.youtube.com/watch?v=W91fOFLhHLI on August 27, 2017 (last viewed Sept. 5, 2018) (posted by Barry Zoeller); "Pyrex glass pan exploding in my kitchen...," https://www.youtube.com/watch?v=ufMkWrVRwft) on Oct. 26, 2016 (last viewed February 17, 2023) (posted by Danny Maiorani)

Shards of glass scattered all over the kitchen, as far as seven feet away. I am very lucky that I wasn't hurt and especially lucky that a shard of glass didn't end up in my eye!  I used the product the way it is supposed to be used. [27]

b. On July 15, 2017, I had an alarming and dangerous incident. I cooked a salmon patty in my Pyrex Glassware dish at 450 degrees for 15 minutes. I removed the dish from the oven, and before I had the chance to put it down, the glassware violently exploded in my hand, sending shards of glass flying toward my face and throughout my kitchen and the adjoining hallway.[28]

c.  My stove, countertop, kitchen floor, hallway floor were covered in large pieces of shattered glass and small shards of it, everywhere. Fortunately, I was wearing my reading glasses, which I believe protected my eyes from injury.[29]

d.  My Pyrex brand glass baking dish shattered spontaneously while sitting in a drawer overnight. While the drawer contained the damage somewhat, chunks of glass sprayed throughout the drawer, ricocheting throughout the cabinet. If this had occurred on a counter, there would have been serious risk.[30]

e.  At 1:20am I heard a crashing sound. Upon looking nothing was evident. Later the same day I opened a lower kitchen cabinet and glass spilled everywhere slivers and shards. My 9 x I3 glass Pyrex baking dish exploded on the shelf in the middle of the night! It hadn't been used for weeks and had no damage. I researched and found this is not an uncommon problem. Why is it still being manufactured?[31]

f.  The consumer stated that she placed the dish, which contained broccoli and olive oil, in a preheated 375-degree oven. About four minutes later, she heard a pop. She went to the oven and saw that the glass dish had shattered. The contents had spilled and cause a fire in

---

[27] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=1712059 (last viewed February 17, 2023).

[28] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l679597 (last viewed February 17, 2023).

[29] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l627314 (last viewed February 17, 2023).

[30] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l627314 (last viewed February 17, 2023).

[31] https://www.saferproducts.gov/PublicSearch/DetaiI?Reportid=l698622 (last viewed February 17, 2023).

the oven. The consumer turned the oven off and got a fire extinguisher to put the fire out.[32]

g. My 9xl 3 Pyrex dish exploded 10/8/17 when I attempted to take it out of our dishwasher. It had run its cycle the night before and was no longer hot, my dish had a handle on edge and I just grabbed it and pulled and immediately it exploded shards everywhere spanning a 3-5 foot radius. I screamed for my husband to secure dogs and kids and clean me a way out as I was barefoot and my right arm had 6 bleeding spots and my left hand had a shard centered in the middle superficially but painful.[33]

h. (In September 2017), I put a large Pyrex measuring cup in my microwave with some stew in it, heated it for less than three minutes, and it shattered when I tried to take it out, burning my hand.[34]

i. (In April 2011) when taking a Pyrex 9x12 baking dish from the oven, it actually blew up in my wife's hands. The dish had been in the oven for 15 minutes at 400 degrees. It contained 4 pieces of baked fish that had marinated for 20 minutes in the refrigerator. The explosion was so violent that we found pieces of glass over 40 feet away. The dish shattered into thousands of small pieces. There were very few pieces over 6 inches long. My wife was wearing jeans and closed shoes. She did not get injured even though she was hit with many, many pieces of shrapnel. It took over two hours to clean up the mess off of cabinets, appliances, counter tops, and the floor.[35]

j. I made lasagna this past weekend (Friday, April 15, 2011) in a Pyrex 9x13 glass baking dish. I only baked it at 350 F for about 30 minutes. When I took it out of the oven and set it on my stove top, the 9x13 glass baking dish exploded. It cut myself and my fiancé, who was approximately 2 feet away from the pan. How can a brand like this stay on our market?[36]

---

[32] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l484232 (last accessed February 17, 2023).

[33] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l703644 (last accessed February 17, 2023)

[34] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l691194 (last accessed February 17, 2023).

[35] https://www.saferproducts.gov/PublicSearch/Detail?Report!d=1 174137 (last accessed February 17, 2023).

[36] https://www.saferproducts.gov/PublicSearch/Detail?Reportid=l l78095 (last accessed February 17, 2023).

65.    There are many, many more incident reports just like those cited above; the complaints listed above are a small selection.

66.    Additional consumer complaints, found on various websites, are consistent with the complaints to the Consumer Product Safety Commission:

   a.    [one-star rating] My dinner was cooking in a Pyrex glassware and it exploded in my face. Luckily I was ok but my oven is destroyed and glass is all over the kitchen.  Luckily no huge fire, but it's very dangerous. Needs to be recalled asap[37].

   b.    [one-star rating] I had a glass pyrex bowl with lid that I loved and used frequently for storage in the refrigerator. This past week I was washing dishes and put the bowl (at room temperature, it had been emptied hours earlier) in my dishwater. As I was washing another dish, the Pyrex bowl shattered into hundreds of pieces in my dishwater!! I received a few small cuts, but it could have been a lot worse! I grew up believing Pyrex was the best, so this came as a shock... Came online looking for a  warranty  and found that I am not alone in having exploding Pyrex. So disappointing! I have the bowl in another container should Pyrex question my veracity.[38]

   c.    [one-star rating] I have had 2 glass 13 x 9 pans explode in the oven. I always have loved Pyrex but now I refuse to buy any more of them or Pyrex of any kind, I stick to metal. One pan had a beautiful roast with potatoes and vegetables. The other had chicken enchiladas, both these pans exploded and of course I had to toss the food out. Very disappointed in Pyrex, no more for me!!![39]

   d.    [one-star rating]. I bought three of these dishes in mid December 2017, to use for entertaining my family over the holidays. The second time I used my new Pyrex dish was to

---

[37] Posted by Catherine of Mount Laurel, NJ, at https://www.consumeraffairs.com/homeowners/ pyrex.html, on April 15, 2018 (last viewed Feb. 17, 2023).

[38] Posted by Denise of Mcgraw, NY, at id., on Mar. 25, 2018.

[39] Posted by Kathleen of Folsom, CA, at id., on Mar. 8, 2018.

reheat our regular sweet corn casserole the day after Christmas. I reheated it as normal and laid it gently on my stove top. Within moments, the dish literally exploded all over my kitchen. I was injured, but thankfully, not badly. Needless to say the dish could not be eaten and I have been afraid to use the additional two dishes I purchased since.[40]

e. [one-star] WARNING FOR AMAZON LOVERS : Don't buy it, its extremely dangerous product. I must say that I read the reviews and some of the buyers indeed warn that this product exploded in their oven but all answers were that they were not following the changes in temperature. We did and guess what?- it exploded in our oven. Beside of the fact that is dangerous its annoying to clean all the mess it leaves.
Now there is no support for this product so I don't really know what to do beside of returning it. It's very disappointing as reviews doesn't capture the poor quality of the material and it says that this is Amazon choice If safety is important for you, you should avoid buying it.[41]

f. [one-star review] I was cooking a roast last night using a pyrex baking dish. The temperature was set on 180 degrees, which I've done hundreds of times before. Whilst baking the dish shattered, I could not salvage the food, glass was all through it. I'm very disappointed in the product. Everything had to be thrown away. Not to mention the time it took to get rid of all the glass and oil. I would like to be compensated in some way for this.[42]

g. [one-star review] I've had three Pyrex cooking dishes so far bust in half while I'm using them to cook. Do you know how aggravating it is to have it happen 3 different times, and three different times I've had to throw my meals away! I will never ever buy Pyrex ever again and I will let others know how disappointed I am with your glass cookware.[43]

h. I took my 2 Pyrex dishes out of oven after making dinner. I

---

[40] Posted by Caroline of Fort Meyers, FL, at id., on Feb. 16, 2018.
[41] Amazon Customer Review, June I, 2019, https://www.amazon.com/gp/customer-reviews/R3NHYT7JYYFSWE/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07L5498Zl (last accessed Feb. 17, 2023).
[42] Shelley from Harrismith, WA, Dec 15, 2017, https://www.hissingkitty.com/complaints-department/pyrex-cookware (last accessed Feb. 17, 2023).
[43] Krista Ortiz, June 13, 2019, https://www.hissingkitty.com/complaints-department/pyrex- cookware (last accessed Feb. 17, 2023).

> place[d one on the] counter on dry cloth and the other on top of stove. I walked to trash can heard a loud noise and the pan blew up all over the kitchen my children were in there thank good no one was really hurt just some cuts from glass. The explosion was so bad it broke the plastic on my coffee maker.[44]

67.     In conjunction with DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLS and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) experience in designing, manufacturing, and selling Pyrex, these consumer complaints and lawsuits confirm that Corelle knew and should have known about and actively concealed the inferior and dangerous nature of soda lime Pyrex from Plaintiff and the general public. Despite this knowledge, Corelle has failed to implement any changes to address the way it formulates, designs, manufactures, markets, tempers and sells Pyrex to consumers.

68.     Defendants Instant Brands LLC f/k/a Corelle Brands, LLS and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) are experienced in the design and manufacture of glassware, and likely conducted and continues to conduct testing on its Pyrex products. Such tests would be designed to assure quality control and to verify that the Pyrex products are free from defects. As a result, Corelle knew or should have known about the inferior and dangerous nature of soda lime Pyrex.

---

[44] Lisa Ketchum from Fort Myers, FL, Oct 14, 2017, https://www.hissingkitty.com/complaints-department/pyrex-cookware (last accessed Feb. 17, 2023).

69.     Plaintiff, Loren Huether, suffered damages as a direct result of Corelle's deceptive practices.

**G.  Defendant's Misrepresentation(s) and Unlawful Failure(s) to Disclose the Defect**

70.     DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLS and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) had a duty to disclose and not to conceal the Defect(s) from Plaintiff and the public.

71.     DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) breached this duty when it failed to disclose the change in glass formulation to consumers, failed to ensure that the quality and safety of Pyrex glassware remained unchanged with the change in formulation, and failed to recall the defective Pyrex products.

72.     DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) continues to falsely represent through both express and implied warranties that Pyrex is free from defects, of merchantable quality, and able to perform dependably for years of normal household use. In every sale of Pyrex products, Corelle warrants that Pyrex is fit for the ordinary purpose for which such goods are used and are free

from defects.[45]

73.    When communicating with customers, DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) do not disclose that Pyrex glassware suffers from the Defect.  As a result, reasonable consumers, including Plaintiff, Loren Huether, purchase and use – and continue to purchase and use Pyrex in their homes without knowledge that it is unsafe to do so.

74.    DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) have wrongfully placed the burden, expense, and difficulty involved in discovering the defect on Plaintiff and the general public, forcing the consumers to replace failed Pyrex and pay for the cost of personal injuries and/or property damage.

75.    DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) have attempted to avoid liability for their dangerous product by adding a set of complex and contradictory warnings to their website and packaging inserts. These warnings are inconsistent with well-known consumer perceptions about Pyrex that

---

[45] *See, e.g.,* PYREX Limited Two-Year Warranty, http://www.pyrexware.com/4.5-qt-oblong- baking-dish/5302470.html#start=2 (last viewed Feb. 17, 2023).

DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) carefully crafted during the borosilicate years and continued to maintain despite the change to soda lime glass. For example, consumers are directed to avoid "sudden temperature changes to glassware" even though Pyrex glassware "can be used for cooking, baking, warming and reheating food in microwave ovens and preheated conventional or convection ovens."[46]

76.     DEFENDANTS Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, as well as JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown)  knew and/or should have known that such confusing and contradictory instructions/statements are not reasonably likely to be understood by most consumers, whom Corelle has conditioned over decades to expect that Pyrex is fit for all household kitchen uses.

77.     Corelle also advertises the dangerous product as made in the U.S.A. Upon information and belief, the soda lime glass and subject dangerous product is and was from China.

**CAUSES OF ACTION**

**<u>COUNT I</u>**
**<u>NEGLIGENCE</u>**

78.     Plaintiff re-alleges and incorporates all allegations raised in PREVIOUS PARAGRAPHS into this cause of action as if set forth herein.

---

[46] https://www.pyrexware.com/use-care-pyrex.html (last viewed Feb. 17, 2023).

79.     At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) designed, produced, distributed and/or manufactured the defective Pyrex glassware at issue using the soda lime glass instead of the borosilicate glass.

80.     At all relevant times, the subject product and glassware was not tempered properly and sold in a defective condition.

81.     At the time of manufacture, the Pyrex glassware was not merchantable and reasonably suited to the use intended - for the cooking of food - because it was not tempered properly and/or used the soda lime glass instead of the borosilicate glass, which renders the product to likely shatter during normal household use.

82.     At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) designed, manufactured, created, distributed, marketed, produced, inspected, packaged and/or sold a Corelle/Pyrex Products and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the product(s).

83.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) knew and/or should have known of the defects inherent in Pyrex glassware used by Plaintiff would deceive consumers, including Plaintiff, and an unreasonably dangerous

and avoidable risk to consumers, which could lead to consumer injuries, such as the Plaintiffs injures in this case.

84.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) were negligent, grossly negligent, careless and/or reckless in designing the Pyrex product using the soda lime glass instead of the borosilicate glass in light of the foreseeable risk of harm and or improperly tempers the subject glass.

85.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) were negligent, grossly negligent, careless and/or reckless through inadequate tempering of the subject glassware.

86.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) are strictly liable under the New Jersey Products liability act NJSA 2A:58C-et seq.

87.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions was/were the proximate cause of the Plaintiffs injury in this case.

88.     As a direct and proximate result of the negligence, carelessness, and/or recklessness of

the Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown),  Plaintiff was caused to sustain and did sustain serious and permanent harms and losses and pursues all remedies permissible by law. These may include, but are not limited to, personal injuries requiring the care and treatment of physicians; hospitalization and medication; injuries that have and will in the future continue to affect in her daily routine; injuries that result in a loss of quality of life; economic losses; special damages; medical bills; aggravation, acceleration, and/or exacerbation of injuries that may be known or unknown; and all other harms and losses that are recoverable by law.

**WHEREFORE**, Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against Defendants, Instant Brands LLC f/k/a Corelle Brands LLC., Amazon.com Inc JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown), jointly, vicariously, severally, or in the alternative, for damages together with attorneys' fees, interest, and cost of suit.

## COUNT  II
### STRICT LIABILITY NEW JERSEY PRODUCTS LIABILITY ACT (2A:58C-1, et. seq.)

89.    Plaintiff re-alleges and incorporates all allegations raised in PREVIOUS COUNTS AND PARAGRAPHS into this cause of action as if set forth herein.

90.    Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious

names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions designed, manufactured, marketed, produced, distributed, inspected, packaged and/or sold the defective Pyrex glassware and defective product.

91. Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions failed to properly temper the subject glass rendering the product defective for anticipated use.

92. At the time of manufacture, the Pyrex glassware was not merchantable, fit, and reasonably suited to the use intended for the cooking of food- because it used the soda lime glass instead of the borosilicate glass, which renders the product to likely shatter and shard during normal household use and/or improperly tempered the subject glass.

93. At all relevant times, Defendants Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions violated all portions of the New Jersey Products Liability Act, codified in 2A:58C-1, et. seq.

94. At all relevant times, Plaintiff used the defective Corelle/Pyrex glassware as intended and suffered personal injuries resulting in significant permanent injuries to her hand requiring multiple surgeries as the defective product shattered into razor sharp shards.

95. Plaintiff's injuries were proximately caused by the defect(s) in the Pyrex glassware.

96. As a direct and proximate result of the aforesaid Plaintiff was caused to sustain and did sustain serious and permanent harms and losses and pursues all remedies permissible by law.

These may include but are not limited to personal injuries requiring the care and treatment of physicians; hospitalization and medication; injuries that have and will in the future continue to affect in her daily routine; injuries that result in a loss of quality of life; economic losses; special damages; medical bills; aggravation, acceleration, and/or exacerbation of injuries that may be known or unknown; and all other harms and losses that are recoverable by law.

97.     Thus, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), are strictly liable for the Plaintiffs' injuries and civil damages.

        **WHEREFORE,** Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against defendant Instant Brands LLC f/k/a Corelle Brands LLC, Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown), jointly, vicariously, severally, or in the alternative, for damages together with attorneys' fees, interest, and cost of suit and such other and further relief as the Court deems just and proper.

## COUNT III

## (FAILURE TO WARN)

98.     Plaintiff re-alleges and incorporates all allegations raised in PREVIOUS PARAGAPHS into this cause of action as if set forth herein.

99.     At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown),

JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions designed, marketed, produced, sold, distributed, created, and/or manufactured the defective Pyrex glassware at issue including, but not limited to, using soda lime glass instead of the borosilicate glass and/or improperly manufacturing tempering the subject glass product.

100.    At the time of manufacture, the Pyrex glassware was not merchantable and reasonably suited to the use intended for the cooking of food because it used the soda lime glass instead of the borosilicate glass, which renders the product to likely shatter during normal household use.

101.    At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions designed, manufactured, created, distributed, marketed, produced, inspected, packaged and/or sold products that were defective, inadequate, and/or insufficient for its intended use due to inadequate/insufficient warnings and/or instructions TO WHICH said Defendants knew and/or should have known of the risk of injury from their Pyrex Glassware product and failed to provided adequate and/or sufficient warnings.

102.    Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the defects, potential defects, and potential harms that could be caused by the product and defects within them.

103.    Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the unreasonable dangers and avoidable risks to consumers, which could lead to consumer injuries, such as Plaintiff's injuries in this case.

104.    Despite this knowledge, Defendants, Instant Brands LLC  f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the failed to disclose the Defect to consumers, including to Plaintiff, at any time before, during or after purchase.

105.    Moreover, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions actively tried to suppress the truth of the defect's danger including, but not limited to, through misleading product branding, packaging and labeling.

106.    Plaintiff injuries were proximately caused by Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the failure to warn of the defects in the glassware used

by Plaintiff including active suppression and misrepresentation of the Pyrex product and failure to provide sufficient warnings.

107. Plaintiff has sustained serious and permanent injuries as a result of Defendants negligence.

WHEREFORE, Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown), jointly, vicariously, severally, or in the alternative, for damages together with attorneys' fees, interest, and cost of suit and such other and further relief as the Court deems just and proper.

## COUNT IV
## VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT  AND DECEPTIVE BUSINESS
## PRACTICES ACT IN VIOLATION OF NJSA 56:8-1, ET SEQ.

108. Plaintiff re-alleges and incorporates all allegations raised in PREVIOUS PARAGRAPHS in this cause of action as if set forth herein.

109. Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the defective Pyrex glassware at issue, including using the soda lime glass instead of the borosilicate glass.

110.   At the time of manufacture, design, distribution, production and/or sale, the Pyrex glassware was not merchantable and reasonably suited to the uses intended for the cooking of food, including because it used soda lime glass instead of the borosilicate glass, which renders the product to likely shatter and shard during normal household use.

111.   Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the defects inherent in Pyrex glassware used by Plaintiff which would pose an unreasonably dangerous and avoidable risk to consumers, and  lead to consumer injuries, such as the Plaintiffs injuries in this case.

112.   Despite this knowledge, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), including their actions/omissions knew and/or should have known of the defects and dangers and  failed  to disclose  the  Defects  to  consumers, including  to Plaintiff, at any time before, during, or after purchase.

113.   Further, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), actively  tried to suppress  the truth  of the defect's danger.

114.    At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown),

JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), marketed Pyrex products as "versatile" glassware made in the U.S.A. that is "safe to use in the oven, microwave, refrigerator, freezer and dishwasher" when it knew that soda lime glass did not match those descriptions.

115. At all relevant times, the Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), designed, manufactured, created, distributed, marketed, produced, inspected, packaged and/or sold by Defendants, Amazon.com, Inc., John Does 1-10 (fictitious names as identity is unknown), Jane Does 1-10, (fictitious names as identity is unknown), ABC Corps. 1-10 (fictitious names as entities are unknown), which were defective, inadequate, and/or insufficient for its intended use including due to inadequate/insufficient warnings and/or instructions.

116. At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) knew and/or should have known of the unreasonable risks of injury from their Pyrex Glassware product, they failed to provided adequate and/or sufficient warnings.

117. Lastly, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), were aware and intended that consumers rely upon the

misrepresentations listed above in the course of trade and commerce.

118.    Plaintiffs are "person[s]" under NJ Consumer Fraud Act 56:8-2, et. seq.

119.    At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), failed to warn of the defects, suppressed the defects, misrepresented the Pyrex glassware's quality including marketing the products as "Made in the U.S.A.," and/or engaged in other fraudulent acts which constitutes conduct that occurred in the course of trade and commerce and a deceptive acts and practices prohibited under NJ Consumer Fraud Act 56:8-1, et. seq., including utilizing the product name and branding and in a manner to skew consumer perceptions of product safety.

120.    Plaintiff's injuries were proximately caused by Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) deceptive acts and practice described above.

121.    As a direct and proximate result, Plaintiff was caused to sustain and did sustain serious and permanent harms and losses and pursues all remedies permissible by law. These may include but are not limited to personal injuries requiring the care and treatment of physicians; hospitalization and medication; injuries that have and will in the future continue to affect in her daily routine; injuries that result in a loss of quality of life; economic losses; special damages; medical bills; aggravation, acceleration, and/or exacerbation of injuries that may be known or unknown; and all other harms and losses that are recoverable by law.

WHEREFORE, Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), as aforesaid, either jointly, severally, or in the alternative, for damages, including treble damages, punitive damages, together, attorney fees, with interest, all remedies permitted under the New Jersey Consumer Fraud Act along the costs of suit and all other relief permitted by law.

## COUNT V
## UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (NJSA 2C:21-7)

122.    Plaintiff re-alleges and incorporates all allegations raised in PREVOUS PARAGRAPHAS into this cause of action as if set forth herein.

123.    At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), produced, designed, distributed and/or manufactured the defective Pyrex glassware at issue using the soda lime glass instead of the borosilicate glass and/or improperly tempered the subject glass product.

124.    At the time of manufacture, the Pyrex glassware was not merchantable and reasonably suited to the use intended- for the cooking of food- including because it used the soda lime glass instead of the borosilicate glass, which renders the product to likely to shatter

into razor sharp shards during normal household use.

125.   At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) knew and/or should have known of the defects inherent in Pyrex glassware used by Plaintiff which would pose an unreasonably dangerous and avoidable risk to consumers and could lead to consumer injuries, such as the Plaintiffs injures in this case.

126.   Despite this knowledge, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), failed to disclose the Defect(s) to consumers, including to Plaintiff, at any time before, during, or after purchase.

127.   Further, Instant Brands, LLC, Corelle actively tried to suppress the truth of the defect's danger and misrepresented that the product is "Made in the U.S.A," other factors, and mispresent the product name/branding skew consumer perception of product safety.

128.   Even further, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), marketed Pyrex products as "versatile" glassware that is "safe to use in the oven, microwave, refrigerator, freezer and dishwasher" when it knew that soda lime glass did not match those descriptions.

129.   At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands,

LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown),   designed, manufactured, created, distributed, marketed, produced, inspected, packaged and/or sold by Defendants were defective, inadequate, and/or insufficient for its intended use due to inadequate/insufficient warnings and/or instructions

130.     At all relevant times, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), knew or should have known of the risk of injury from their Pyrex Glassware product and failed to provided adequate and/or sufficient warnings.

131.     Lastly, Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), knew and intended that consumers rely upon the misrepresentations listed above in the course of trade and commerce.

132.     Plaintiff and Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), are "person[s]" under 2c:21-7 and NJ CONSUMER FRAUD ACT.

133.     Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), misrepresentations of the quality, origin,  and uses of the Pyrex

glassware are deceptive trade practices including DECEPTIVE BUSINESSS PRACTICES under NJSA 2c:21-7, et. seq., negligence per se.

134.    Plaintiff's injuries were proximately caused by Defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown) deceptive trade practices described herein.

135.    As a direct and proximate result Plaintiff was caused to sustain and did sustain serious and permanent harms and losses and pursues all remedies permissible by law. These may include but are not limited to personal injuries requiring the care and treatment of physicians; hospitalization and medication; injuries that have and will in the future continue to affect in her daily routine; injuries that result in a loss of quality of life; economic losses; special damages; medical bills; aggravation, acceleration, and/or exacerbation of injuries that may be known or unknown; and all other harms and losses that are recoverable by law.

WHEREFORE, Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), as aforesaid, either jointly, severally or in the alternative, for damages, punitive damages, interest, treble damages, or in the alternative, for damages together with attorneys' fees, interest, plus the costs of suit and all other relief permitted by law.

## COUNT VI
## PER QUOD

136.    Plaintiff, Gregory Huether, repeats and reiterates each and every paragraph and

Count contained in this Complaint as if set forth at length herein.

137.     Plaintiff, Gregory Huether, is the husband of the Plaintiff, Loren Huether.

138.     As a result of the injuries suffered as aforesaid, the Plaintiff Gregory Huether, has suffered the loss and usual services and consortium of his wife, Loren Heuther.

139.     Plaintiff Gregory Heuther has sustained civil damages and losses as a proximate result.

**WHEREFORE**, Plaintiffs, by and through Plaintiffs' attorneys, DeFrank Law Group, LLC, pray for damages against defendants, Instant Brands LLC f/k/a Corelle Brands, LLC and Amazon.com Inc, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as identity is unknown), as aforesaid, either jointly, severally or in the alternative, for damages together with interest and costs of suit and such other and further relief as the Court deems just and proper.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026                    BY: _____
                                               **ANDREW A. FRASER, ESQ**

**JURY DEMAND**

Pursuant to R. 1:8-2(b), Plaintiff hereby demands a Trial by Jury on all the issues raised in the within Pleadings.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026            BY: _____

**ANDREW A. FRASER, ESQ.**


## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, **ANDREW A. FRASER, ESQ.**, is designated as trial counsel.


## TIME UNIT RULE

Plaintiff(s) intend to use the Time Unit Rule Pursuant to R. 1:7-1(b).

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action

pending in any Court or of a pending arbitration proceeding, nor is any such action or

proceeding presently contemplated.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026            BY: _____

**ANDREW A. FRASER, ESQ.**

**DE FRANK LAW GROUP, LLC**
**ANDREW A. FRASER, ESQ. – 006221989**
**986 McBride Avenue**
**Woodland Park, New Jersey 07424**
**Tel. (973) 404-7500**
**Fax. (973) 238-5123**
**ecourts@defranklawgroup.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| **LOREN HUETHER and GREGORY HUETHER, her husband,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown**<br><br>*Defendant(s)*. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY**<br><br>**DOCKET NO.: MRS-L-**<br><br>*Civil Action*<br><br>**DEMAND FOR THE DISCOVERY OF INSURANCE** |

Pursuant to R. 4:10-2(b), demand is hereby made that the Defendants, disclose to the undersigned whether there are any insurance agreements or policies under which any person of firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. This request applies also to information regarding excess, umbrella or other supplemental insurance policies available to each Defendant.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026                BY: _____
                                                            **ANDREW A. FRASER, ESQ.**

**DE FRANK LAW GROUP, LLC**
**ANDREW A. FRASER, ESQ. – 006221989**
**986 McBride Avenue**
**Woodland Park, New Jersey 07424**
**Tel. (973) 404-7500**
**Fax. (973) 238-5123**
**ecourts@defranklawgroup.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| **LOREN HUETHER and GREGORY HUETHER, her husband,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown**<br><br>*Defendant(s).* | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY**<br><br>**DOCKET NO.: MRS-L-**<br><br>*Civil Action*<br><br>**DEMAND FOR THE PRODUCTION OF STATEMENTS** |

Pursuant to R. 4:10-2(c), demand is hereby made that the Defendants, disclose to the defendants provide the attorney filing this pleading with true and complete copies of any and all statements by any and all parties, witnesses, and persons with knowledge regarding the subject matter of this case.  If your claim is of "privilege," your response must still identify the date of the statement, the individuals providing and receiving the statement, and the reason you assert that the statement is privileged.  This includes oral and written statements.

> **DE FRANK LAW GROUP, LLC.**
> *Attorneys for Plaintiff*
>
> /s/Andrew A. Fraser

Dated: January 13, 2026          BY: _____
                                      **ANDREW A. FRASER, ESQ.**

**DE FRANK LAW GROUP, LLC**
**ANDREW A. FRASER, ESQ. – 006221989**
**986 McBride Avenue**
**Woodland Park, New Jersey 07424**
**Tel. (973) 404-7500**
**Fax. (973) 238-5123**
**ecourts@defranklawgroup.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| LOREN HUETHER and GREGORY HUETHER, her husband, <br><br> *Plaintiffs,* <br><br> v. <br><br> INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown <br><br> *Defendant(s).* | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY <br><br> DOCKET NO.: MRS-L- <br><br> *Civil Action* <br><br> STATEMENT OF DAMAGES |

Pursuant to R. 4:5-2 the following is the amount of damages claimed in the above entitled

action:

**5,000,000**

DE FRANK LAW GROUP, LLC.<br><em>Attorneys for Plaintiff</em>

/s/Andrew A. Fraser

Dated:  January 13, 2026                    BY: _____
<strong>ANDREW A. FRASER, ESQ.</strong>

**DE FRANK LAW GROUP, LLC**
**ANDREW A. FRASER, ESQ. – 006221989**
**986 McBride Avenue**
**Woodland Park, New Jersey 07424**
**Tel. (973) 404-7500**
**Fax. (973) 238-5123**
**ecourts@defranklawgroup.com**
*Attorneys for Plaintiff*

| | |
|---|---|
| **LOREN HUETHER and GREGORY HUETHER, her husband,** <br><br> *Plaintiffs,* <br><br> v. <br><br> **INSTANT BRANDS, LLC f/k/a CORELLE BRANDS, LLC, PYREX BRANDS, LLC, AMAZON.COM INC, JOHN DOES 1-10 (fictitious names as identity is unknown), JANE DOES 1-10 (fictitious names as identity is unknown), ABC CORPS. 1-10 (fictitious names as entities are unknown** <br><br> *Defendant(s).* | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY** <br><br> **DOCKET NO.: MRS-L-** <br><br> *Civil Action* <br><br> **DEMAND FOR ANSWERS TO INTERROGATORIES AND NOTICE TO PRODUCE** |

## <u>DEMAND FOR ANSWERS TO UNIFORM AND SUPPLEMENTAL INTERROGATORIES</u>

**PLEASE TAKE NOTICE** that pursuant to Rule 4:17-1(b)(ii)(2), Plaintiff hereby demands answers to Uniform Interrogatories Form C, Form C(1), and Form C(4) within sixty (60) days of the filing of Defendant's Answer to this Complaint.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 4:17-1(b)(i)(1) and Rule 4:17-2, Plaintiff hereby demands answers to the attached Supplemental Interrogatories within sixty (60) days of the filing of Defendant's Answer to this Complaint.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026                    BY: _____

**ANDREW A. FRASER, ESQ.**

## DEFINITIONS AND INSTRUCTIONS

1.      The term "plaintiff" or "plaintiffs" refers to each plaintiff in this action include a personal representative, the term "plaintiff" refers to the decedent represented.

2.      The term "documents" means all writings of any kind, including the originals, all copies, and all non-identical copies, whether different from the original by reason of any notation made on such copies, or otherwise, and includes, without limitation, agenda, announcements, photographs, audit sheets, agreements, accountant's worksheets, bids, bills, books, brochures, bulletins, contracts, communications, computer print-outs, correspondence, checks, charts, diaries, drafts, estimates, graphs, inter and intra-office communications, invoices, letters, memoranda, manuals, minutes or summaries of meeting, MAG cards, MTST tapes, floppy disks, notes, notations of telephone calls, offers, proposals, prospectuses, returns, resolutions, statements (including without limitation, checking accounts, savings accounts, certified and uncertified financial) sketches, schedules, studies, statistics, stenographic notes, summaries, tabulations, tax returns (including without limitation federal, state and local tax returns, federal and state gift tax returns and federal and state estate tax returns), telephone call slips, telegrams, telexes, teletypes, worksheets, periodicals, drawings, accounting journals, purchase orders, inventory records or cards, traveling requisitions and bills of lading.

3.      The term "document" includes all drafts' alterations, modifications, changes and amendments of any of the items listed in Paragraph 2, and includes graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motions pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs, recordings).

4.      The term "documents" refers to all items set forth in Paragraphs 2 and 3 above, known to or in the possession, custody of the recipient of this notice or subpoena, or any of its officers, directors, agents, attorneys, servants, employees or representatives, and every such documents which can be located or discovered by reasonably diligent efforts.

5.      The term "defendant" means any and all defendants in the within action.  Note, however, that in responding to the within request, plaintiffs should indicate to which of the specific plaintiffs the documents relate.

6.      This request is continuing request throughout the course of the litigation of the above-captioned matter.  Accordingly, if at any time information requested herein becomes known to defendants such information is to be forwarded to counsel for this plaintiff.

7.      Defendants are to respond separately, within thirty days, to each paragraph of this request.

## DOCUMENTS REQUESTED

1.     Any and all statements made by any party to this lawsuit, their agents, representatives or employees, whether written or oral.  If you are claiming a privilege, please state so specifically.  Nonetheless, the existence of a statement, including the date taken must be provided.

\* If you claim privileged, you must state so specifically.  Your answer must still identify the existence of any and all statements, including the date of the statement, the individuals making said statement(s), and individuals present for said statement.

2.     Any and all oral and written statements made by any witnesses to the events described in any and all of the paragraphs of the cause of action.

\* If you claim privileged, you must state so specifically.  Your answer must still identify the existence of any and all statements, including the date of the statement, the individuals making said statement(s), and individuals present for said statement.

3.     Any and all statements made by any person other than witnesses or parties which relate or refer in any way to the cause of action.

\* If you claim privileged, you must state so specifically.  Your answer must still identify the existence of any and all statements, including the date of the statement, the individuals making said statement(s), and individuals present for said statement.

4.     Any and all written reports rendered by plaintiff (s) and defendant (s) proposed expert witnesses, including, but not limited to any medical expert witnesses intended or not intended to be called at the time of trial.

5.     Any and all books, treaties, commentaries, reports, statutes, codes, ordinances, rules, regulations or other published documents referred to and utilized by or relied upon by any expert witness whom defendants intend to call at trial.

6.     Any and all blue prints, charts diagrams, drawings, graphs, maps, plats, plans, photographs, models or other visual reproductions of any object, place or thing prepared or utilized by, referred to or relied upon by any expert witnesses whom defendants intend to call at time of trial.

7.     A copy of any and all written report or summaries of oral reports, as well as copies of the curriculum vitae, of any and all experts that have been supplied to plaintiff's and defendant's attorneys, whose testimony will be offered at time of the Trial in the above captioned matter.

8.     All liability experts' reports.

9.     Any documents obtained from any party or any of its agencies, branches or subdivisions.

10.     Copies of any statements obtained from any witnesses, any party, any party's investigators, agents, servants, or employees; if oral, a complete summary of same.

11.     Copies of all interrogatories exchanged by the parties.

12.     Copies of all depositions conducted in the case.

13.     Copies of all Requests for Admissions and responses exchanged.

14.     Copies of any Demands to Produce and responses exchanged.

15.     Copies of all Court Orders.

16.     Copies of any scheduling notice in this matter.

17.     If amended pleadings have been filed, copies of all original pleadings.

18.     Provide a detailed summary and/or provide any supporting documents relating to or demonstrating all insurance benefits available to the defendant as a result of this incident together with a summary of benefits paid to date.

19.     Provide a copy of any and all videotape recordings, photographs, films, visual reproductions of the plaintiff or any object, place or thing made in connection with this matter.

20.     Copies of any and all reports, memos, logs, and minutes generated from investigations of the incident that forms the basis for Plaintiff's Complaint.

21.     Copies of any and all documents, guidebooks, manuals, handbooks, videos, and/or training modules/materials in effect on the date of the incident including, but not limited to, contracts and correspondences regarding, including but not limited to, safety/use guides for the costume set forth in Plaintiff's Complaint.

22.     Copies of any and all investigation reports regarding the present matter.

23.     Copies of any and all documents, guidebooks, manuals, handbooks, videos, and/or training modules/materials that at all relate to installation, upkeep, maintenance and/or repair of Defendants' products that were in place, effective, and/or in circulation at the time of the incident.

24.     Copies of any and all correspondence between the parties, its agents, servants, and employees to any other defendant in the matter regarding the upkeep, maintenance and/or repair of Defendants' products that were in place, effective, and/or in circulation at the time of the incident. and/or repair of Defendants' products for the Sink in this incident.

25.     Copies of any and all documents, including correspondence(s) and invoice(s) between the parties regarding upkeep, maintenance, and/or repairs of the Defendants' products within the last five (5) years.

**DE FRANK LAW GROUP, LLC.**
*Attorneys for Plaintiff*

/s/Andrew A. Fraser

Dated: January 13, 2026                    BY: _____
                                                **ANDREW A. FRASER, ESQ.**